## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| Trustgard Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 3:17-cv-00807-JMC |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Michael Brown, individually and d/b/a, | ) | |
| Triple S Transport, and Sharon Collins, | ) | |
| Dorothy L. Jackson as Executor of the | ) | |
| Estate of Alfred Jackson, Sr., John A. | ) | |
| Godfrey, Mattie E. Render and Dorothy L. | ) | |
| Jackson | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court pursuant to Plaintiff Trustgard Insurance Company's ("Trustgard") Motion for Summary Judgment (ECF No. 31). Specifically, Trustgard seeks an order of the court declaring that a commercial motor vehicle policy issued by Trustgard to Defendant Michael Brown ("Brown") does not provide coverage to Brown for an underlying motor vehicle accident where neither Brown nor the insured vehicle were involved in that accident, and where the MCS-90 endorsement[1] attached to that policy is not implicated. (ECF No. 31 at 1.) Defendant Sharon Collins ("Collins") opposes Trustgard's Motion. (ECF No. 34.) For the reasons set forth below, the court **GRANTS** Trustgard's Motion for Summary Judgment (ECF No. 31).

---

[1] An MCS-90 endorsement is intended to "eliminate the possibility of a denial of coverage by requiring the insurer to pay any final judgment recovered against the insured for negligence in the operation, maintenance, or use of motor vehicles subject to federal financial responsibility requirements, even though the accident vehicle is not listed in the policy." 1 *Auto Liability Ins.* 4th § 2:12 (2008).

1

# I. JURISDICTION

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Trustgard is a corporation organized and existing under the laws of the state of Ohio, with its principal place of business in the state of Ohio. (ECF No. 1 at 1.) Brown is a citizen and resident of Allendale County, South Carolina and Collins is a citizen and resident of the state of Georgia. (*Id*.) The amount in controversy in this matter exceeds $75,000.00. (*Id*. at 2.)

# II. FACTUAL AND PROCEDURAL BACKGROUND

On November 27, 2014, Collins was injured in a motor vehicle accident in Lexington County, South Carolina. (ECF No. 43 at 2.) Collins was a passenger in a passenger van being operated by Dorothy Jackson ("Jackson"). (*Id*. at 3.) Jackson's van rear ended a car trailer being towed by a 2014 Dodge Tow Truck owned and operated by Jerome McWilliams ("McWilliams"). (*Id*.)

Collins has filed a lawsuit in the Allendale County, South Carolina, Court of Common Pleas: *Sharon Collin v. Michael McWilliams, James Moore, Gerroll Lingard, and Michael Brown d/b/a Tripe S Transport, a South Carolina Transport Company; One Stop Trucking Company and Kerion Murray Individually*, Case No. 2016-CP-03-00124 ("Underlying Lawsuit"). (ECF No. 1-1.) The complaint makes clear that McWilliams was operating his own 2014 Dodge, towing a car trailer, when the accident took place. (*Id*. at 3.)

In addition to suing McWilliams as the owner and operator of the Dodge tow truck, Collins sued Murray and One Stop Trucking Company as the owner of the car trailer McWilliams was towing. (ECF No. 31-1 at 2.) Murray was also a passenger in McWilliams's truck. (*Id*.) Collins also sued James Moore and Gerroll Lingard who were passengers in McWilliams's Dodge truck at the time of the accident. (*Id*.) Finally, and pertinent to this action, Collins sued Brown. (*Id*.)

Collins does not allege that Brown's vehicle was involved in the accident or that he was present. (*Id.*) Instead, Collins contends that the underlying wreck involved McWilliams who was driving his own truck, but displaying Brown's Interstate Commerce Commission ("ICC") Motor Carrier[2] number at the time of the collision. (ECF No. 34 at 1.)

On September 15, 2017, Trustgard filed a Motion for Summary Judgment, asserting that there is no genuine issue of material fact because Brown's insurance policy does not provide coverage pursuant to its terms, and the MCS-90 endorsement in the policy is not applicable because McWilliams's vehicle which was actually involved in the accident has $1,000,000.00 in liability coverage, thus obviating the MCS-90 suretyship. (ECF No. 31.)

On October 10, 2017, Collins filed a response in opposition to Trustgard's Motion, asserting: (1) Trustgard's Motion incorrectly contends that Trustgard would be relieved of its responsibility to satisfy a judgment against Brown as long as the people harmed by Brown's negligence can recover from McWilliams; and (2) the summary judgment motion is premature because it improperly presumes there is no possibility of a judgment against Brown as a motor carrier for hire even though Brown is a defendant in the underlying litigation concerning the accident and may yet have a judgment entered against him. (ECF No. 34.) On October 24, 2017, Trustgard filed a reply to Collins' response, largely reasserting its position in its Motion for Summary Judgment. (ECF No. 39.)

**Insurance Policies**

Trustgard issued policy number XA 2102843-00 to Brown d/b/a Triple S Transport providing coverage for the period 09/17/2014 to 09/17/2015 ("Brown policy"). (ECF No. 31-1 at

---

[2] A "motor carrier" is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14).

2.) On the date of the accident, the Brown Policy provided liability coverage for only one motor vehicle, a 2004 Ford Car Carrier, and for one driver, Brown. (*Id*. at 3.) Neither that 2004 Ford nor Brown were in or present for the motor vehicle accident.[3] (*Id*.)

McWilliams's Dodge tow truck involved in the accident was, coincidentally, insured by Trustgard through policy number XA 2113522-00, policy period 9/30/13 to 9/30/15 ("McWilliams policy"). (*Id*.) The McWilliams policy provides $1,000,000.00 in liability coverage per accident. (*Id*.) Trustgard admitted that if McWilliams is found liable to Collins for negligent operation of his Dodge truck, the McWilliams policy provides coverage for the resulting judgment. (*Id*.)

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor.'" *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1863 (2014) (per curiam) (brackets omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving part[ies]," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248.

The movant bears the initial burden of demonstrating to the court that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this threshold showing has been made, the non-moving party cannot survive summary judgment by resting on the allegations in the pleadings. Rather, the non-moving party must provide specific, material facts

---

[3] The Brown Policy was later amended to provide coverage for a 1999 Ford pickup truck and for another driver, Randy Utz. (ECF No. 31-1 at 3 n.1.) Neither the 1999 Ford nor Utz were involved in the accident. (*Id*.)

giving rise to a genuine issue. *See id*. at 324. Under this standard, the mere scintilla of evidence is insufficient to withstand the summary judgment motion. *See Anderson*, 477 U.S. at 255 (1986).

Where a motion for summary judgment presents a question concerning the construction of a written contract, the question is one of law if the language employed by the contract is plain and unambiguous. *Moss v. Porter Bros., Inc.*, 292 S.C. 444, 357 S.E.2d 25, 27 (1987) (citing *First-Citizens Bank & Trust Co. v. Conway Nat'l Bank*, 282 S.C. 303, 317 S.E.2d 776 (1984)). Summary judgment is proper in such a case where the intention of the parties regarding the legal effect of the contract may be gathered from its four corners. *Id*.

Similarly, issues of statutory interpretation are questions of law which the court may properly resolve on summary judgment. *See U.S. v. West Virginia*, 339 F.3d 212, 214 (4th Cir. 2003) ("Because this dispute ultimately turns entirely on a question of statutory interpretation, the district court properly proceeded to resolve the case on summary judgment."); *see also CFRE, LLC v. Greenville Cnty. Assessor*, 395 S.C. 67, 73, 716 S.E.2d 877, 881 (2011).

## IV.     ANALYSIS

### A. Brown Policy

Collins contends that Brown was "legally responsible" for the vehicle driven by McWilliams at the time of the collision, and therefore the policy issued by Trustgard covering Brown applies to the accident. (ECF No. 34 at 3.) Collins is incorrect. The Brown policy does not provide coverage because there was not a covered "auto" involved in the accident.

"Section II-Liability Coverage" under the "Business Auto Coverage Form" of the Brown Policy provides, in pertinent part, that the policy provides coverage for damage, "…caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (ECF No. 31-2 at 17.) The policy provides that Trustgard has a duty to defend any "insured" against a "suit"

5

seeking such damages. (*Id*.) The "Who is an Insured" section provides, in total, that no one is an insured unless they are using a covered "auto." (*Id*.)

The Declarations page in the Brown policy provides that the only covered vehicle on the day of the accident is a 2004 Ford Car Carrier. (ECF No. 31-2 at 3.) The 2014 Dodge tow truck McWilliams owned and was operating was never listed as an insured vehicle on the Brown policy. Simply put, because an "auto" covered by the Brown policy was not involved in this accident, the Brown policy, by its terms, does not provide either defense or indemnity coverage for the accident.

Collins points to two potential avenues for a judgment to be entered against Brown to espouse that the policy does become implicated. (ECF No. 34 at 5.) First, Collins asserts that if McWilliams provides testimony that Brown was the motor carrier for hire on the job, Brown would be liable for any negligence on the part of McWilliams under the doctrine of respondeat superior. (*Id*.) This argument ignores the fact that McWilliams testified he did not have an owner-operator agreement or lease agreement with Brown (ECF No. 39-1) and Brown testified that he did not have an owner-operator or lease agreement with McWilliams (ECF No. 39-2 at 4).

Second, Collins states that South Carolina recognizes claims of negligent hiring, training, and supervision not as derivative claims relying on the negligence of an employee, but instead as direct claims against a defendant for its own negligence. (ECF No. 34 at 5.) Even if Brown was held liable for negligent hiring, training, or supervision in the underlying lawsuit, it would not invoke the coverage afforded by the Trustgard policy, which insures Brown for "ownership, maintenance and use of designated motor vehicle(s)." (ECF No. 31-2 at 17.) Therefore, while there may be an unresolved dispute in the state court action as to whether Brown is liable at all, there is no issue of fact which could change the issue of coverage for Brown under his policy with Trustgard. *See Diamond State Ins. Co. v. Homestead Indus. Inc.*, 318 S.C. 231, 236 (1995) ("A

6

court must give [insurance] policy language its plain, ordinary, and popular meaning); *see also South Carolina Ins. Co. v. White*, 301 S.C. 133, 137 (Ct. App. 1990) ("An insurer's obligation under a policy of insurance is defined by the terms of the policy and cannot be enlarged by judicial construction.").

### B. MCS-90 Endorsement

The Brown policy includes an "Endorsement for Motor Carrier Policies of Insurance for Public Liability Under §§ 29 and 30 of the Motor Carrier Act of 1980." (ECF No. 31-2 at 10.) This is commonly referred to as the MCS-90 endorsement. The primary purpose of the MCS-90 endorsement is to protect injured members of the public by ensuring that they can recover up to the required levels of insurance coverage for vehicles operating under a motor carrier's authority, even if the vehicle involved in the accident is not an insured vehicle under the policy issued to the motor carrier. *See Canal Ins. Co. v. Distribution Services, Inc.*, 320 F.3d 488, 489-90 (4th Cir. 2003).

Federal regulations require interstate trucking companies to maintain insurance or another form of surety "conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles." 49 C.F.R. § 387.301(a); *see also id*. § 387.7. To satisfy this insurance requirement, most interstate trucking companies obtain a specific endorsement to one or more of their insurance policies—the MCS-90 endorsement—which guarantees payment of minimum amounts, as set forth in the regulations, to an injured member of the public. *Id*. at §§ 387.7, 387.9. The federal regulatory scheme provides for different minimum financial responsibility coverage amounts. Motor carriers must maintain at least $750,000.00 in financial responsibility coverage for vehicles transporting non-hazardous cargo, $1,000,000.00 for vehicles transporting oil and

certain hazardous substances, and $5,000,000.00 for other hazardous substances and radioactive materials. *See id*. § 387.9.

Collins cites to *Herrod v. Wilshire Insurance*, 499 F. App'x 753 (10th Cir. 2012) for the proposition that Trustgard should not be relieved of an MCS-90 surety obligation because the MCS-90 policy limits have been tendered as to another insured's policy. (ECF No. 34 at 3.) In *Herrod*, Wilshire Insurance Company ("Wilshire") had an MCS-90 endorsement on an insurance policy issued to Espenschied Transport ("Espenschied"). *Id*. at 756. Espenschied leased a trailer to DATS Trucking ("DATS"). *Id*. A truck owned by DATS, towing the trailer owned by Espenschied, was involved in an accident causing fatal injuries to Herrod. *Id*. The Herrod family brought suit in state court against Espendshied and DATS. *Id*. Espendschied and DATS settled their claims, with Espendschied confessing to a judgment of approximately $1,200,000.00 and DATS and its insurers agreeing to pay approximately a lump sum with additional sums in future payments. *Id*.

When the Herrods presented the payment to Wilshire for payment on Espendschied's MCS-90 surety obligation, Wilshire refused to pay. The Tenth Circuit upheld the district court's ruling that Wilshire could not avoid paying a negligence judgment against its insured because the injured party had already received compensation from or on behalf of a different motor carrier, DATS. *Herrod*, 499 F. App'x at 757. Crucially, *Herrod* involved liability among two parties— DATS and Espenschied—both of whom were registered motor carriers, and both of whom owned a vehicle or trailer involved in the accident. *Herrod v. Wilshire Ins. Co.*, 737 F. Supp. 2d 1312, 1314 (D. Utah 2010).

The facts in *Herrod* are in stark contrast with the present case, where Brown did not own, operate, maintain or use either the truck or trailer involved in the accident. Brown himself was not

even present during the accident. Additionally, as discussed above, there was not an owner-operator agreement or lease agreement between McWilliams and Brown. (ECF Nos. 39-1 at 4, 39-2 at 4.) It follows from the regulatory scheme and the text of the MCS-90 endorsement that the surety obligation is triggered only when the underlying insurance policy does not provide coverage and either: (1) no other insurance policy is available to satisfy the judgment against the motor carrier, or (2) the motor carrier's insurance coverage is insufficient to meet the federally-mandated minimum level. *See Carolina Cas. Ins. Co. v. Yeates,* 584 F.3d 868, 879 (10th Cir. 2009). "Once the federally-mandated minimums have been satisfied, however, the endorsement does not apply." *Id.* Here, another insurance policy (McWilliams's policy) that is attached to the vehicle actually involved in the accident is available to satisfy any possible judgment against Brown above and beyond the federally-mandated minimum.

The McWilliams policy has $1,000,000.00 in coverage, satisfying the 49 C.F.R. § 387.9 requirement that a vehicle for hire, with a gross vehicle weight rating of 10,001 or more pounds transporting nonhazardous property carry $750,000.00 in insurance. Trustgard does not dispute that the McWilliams policy provides liability coverage to McWilliams for the accident. (ECF No. 31-1 at 2.) The court will not construe the MCS-90 endorsement as insurance coverage that can be "stacked" on top of sufficient liability coverage. The Dodge car was towing an empty car carrier/trailer, and $1,000,000.00 in coverage provided by the McWilliams policy satisfies the $750,000.00 federally mandated minimum. Accordingly, the public policy purposes underlying the MCS-90 have been satisfied.

## V. CONCLUSION

For the foregoing reasons, Trustgard's Motion for Summary Judgment is **GRANTED** (ECF No. 31). The court declares that Trustgard has no duty to Michael Brown, individually or

d/b/a Triple S. Transport, or to pay any judgment against Michael Brown in favor of Sharon Collins, The Estate of Alfred D. Jackson, Sr., John Godfrey, Mattie Render or Dorothy Jackson.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

December 4, 2017
Columbia, South Carolina